PARKER APPLIANCE CO. v. IRVIN W.
MASTERS, Inc., et al.
Civ. No. 7874.

United States District Court
S. D. California, Central Division.

Oct. 16, 1950.

Lyon & Lyon, Los Angeles, Cal., Bair, Freeman & Molinare, Chicago, Ill., for plaintiff.

Huebner, Beehler, Worrel, Herzig & Caldwell, Los Angeles, Cal., for defendants.

WESTOVER, District Judge.

The Parker Appliance Company is the owner of Parker Patent No. 2,212,183, which said patent covers a tube coupling. A tube coupling is composed of three members: (1) a body, (2) a nut, and (3) a sleeve. Plaintiff admits that the body and the nut are prior art. The validity of the patent depends on the sleeve.

Tube couplings are not new. Tube couplings have been used for many years. Sleeves are not new in tube couplings. In fact, from the very beginning, sleeves have been used by inventors and manufacturers of tube couplings. Throughout the years the shape and form of sleeves have been changed, according to the desires of the users or the so-called inventive genius of the inventor.

A sleeve has a flare and a sleeve head. The shape and form of both the sleeve head and the flare have been changed from time to time. An examination of the drawings in Patents Nos. 1,893,442 (1933), 1,977,240 (1934), 2,212,183 (1940—plaintiff's patent in suit), and of the AC 811 Standard Fitting will disclose the various changes which have been made both in the flare and in the head of the sleeve.

As frequently stated at the trial, the two important improvements claimed in the patent in question are the difference in angle between the outer wall of the sleeve and the inner wall of the nut, which is termed "the sleeve head angle," and the difference in angle initially between the inner angular surface of the sleeve head and the outer angular surface of the tube flare, which is termed "the differential angle." Plaintiff claims that no prior art, patents, or publications in evidence show these features individually or in combination.

In its patent application, in describing the sleeve, plaintiff did not attempt to depict the angle of the "sleeve head angle" or the angle of "the differential angle." Claim 1 of the patent stated that "said head, having the inner surface thereof provided with a coniform flare *so shaped* that the initial contact of the head with the flared end of the tube is at the free end of the head * * *, whereby during the clamping action said head will be expanded and moved forward along the flared end of the tube * * *"

Claim 2 provided that "* * * the outer surface of said head and the said inner wall of the coupling member being *so shaped* relative to each other that when the sleeve head expands during the clamping action they will contact only in the region of the clamping shoulder, * * *"

Claim 3 stated "* * *, said head having the inner surface thereof provided with a coniform flare *so shaped* that the initial contact of the head with the flared end of the tube is at the free end of the head and adjacent the outer end of the flared end of the tube, the outer surface of said head and said inner wall of the coupling member being *so shaped* relative to each other that when the sleeve head expands during the clamping action, the portion of said head contacting with the flared end of the tube is at all times out of contact with the coupling member whereby the clamping face of the head against the tube end is determined by the spring tension of the metal forming said head."

In each of the claims, plaintiff alleges the parts are "so shaped" that they produce certain, particular results. With the patent application plaintiff attached certain drawings, depicting the flare "so shaped" that it would produce the results as described in the patent.

Plaintiff alleges defendants are infringing plaintiff's patent and brings these actions for infringement. The defendants contend, among other things, that Claims 1, 2 and 3 of the Parker Patent, No. 2,212,-183, are invalid for uncertainty and failure to meet the requirements of Revised Statutes, Section 4888, 35 U.S.C.A. § 33.

As heretofore stated, plaintiff did not in the patent application attempt to actually describe the flare "so shaped" but after the use of the words "so shaped" merely described what it would do. It would seem that the claim, after the words "so shaped," is simply a functional description.

The pertinent provisions of Revised Statutes, Section 4888, 35 U.S.C.A. § 33, are as follows: "Before any inventor or discoverer shall receive a patent for his invention or discovery he shall make application therefor, in writing, to the Commissioner of patents, and shall file in the Patent Office a written description of the same, and of the manner and process of making, constructing, compounding and using it, in such full, clear, concise and exact terms as to enable any person skilled in the art or science to which it appertains, or with which it is most nearly connected, to make, construct, compound, and use the same; and in case of a machine, he shall explain the principle thereof, and the best mode in which he has contemplated applying that principle, so as to distinguish it from other inventions; and he shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery."

From the foregoing, it will be noted it is incumbent upon the inventor to file a written description of the thing claimed invented, containing "full, clear, concise and exact terms as to enable any person skilled in the art or science to which it appertains * * * to make, construct, compound, and use the same".

If the inventor fails to include in his patent claim such a description, then the patent must be found to be invalid. "An inventor may not compel independent experimentation by others in order to ascertain the limits of his claims since under the patent law the claims measure the invention."—Sales Affiliates, Inc. v. Hutzler Bros. Co., D.C., 71 F.Supp. 287.

Plaintiff in its claim said the sleeve is "so shaped" that it produces certain results. What did plaintiff mean by "so shaped"? There is nothing in the patent application or in the claims to indicate just how the sleeve was to be shaped. No effort was made to give the various angles of the sleeve or to set out any other pertinent engineering detail. Plaintiff was satisfied with describing the sleeve as "so shaped" that it would produce a certain result.

With the patent application plaintiff filed certain drawings, illustrating the flare "so shaped" as mentioned in the application. Although the drawings in themselves give the general shape and contour of the sleeve, the drawings do not indicate in any way the size of the angles, evidently leaving the size of the angles to engineering research.

■ The claims, as stated by the Court in Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 419, 28 S.Ct. 748, 52 L.Ed. 1122, measure the invention. The claims may be explained and illustrated by the description, but the illustration cannot enlarge the claims. Again, in the case of Yale Lock Co. v. Greenleaf, 117 U.S. 554, at page 559, 6 S.Ct. 846, 848, 29 L.Ed. 952, the Court says: " * * * The scope of letters patent must be limited to the invention covered by the claim, and while the claim may be illustrated it cannot be enlarged by language used in other parts of the specification."

■ In the Incandescent Lamp Patent Case, 159 U.S. 465, the Court says, at page 474, 16 S.Ct. 75, 78, 40 L.Ed. 221: " * * * If the description be so vague and uncertain that no one can tell, except by independent experiments, how to construct the patented device, the patent is void."

Measured by the Incandescent Lamp Patent case, supra, it would seem necessary to hold the instant patent void. No one, taking the patent and not using the illustrations, could make the sleeve in question "so shaped" that it would produce the results claimed for it, without independent experimentation. The idea is there expressed that the sleeve could be "so shaped" as to produce certain specific results, but any one attempting to make such a sleeve would have to experiment to determine, by the trial and error method, just what shape should be used on the sleeve.

■ Although it may be, as set forth by plaintiff in its brief, that the claims of a patent must be read in the light of the drawings and specifications, nevertheless the Supreme Court has limited the right of the patentee to the claims made, and although the illustrations may explain the patent they may not be used to enlarge the claims. A patent covers only that which it claims, and only what is expressly claimed can be infringed. Continental Paper Bag Co. v. Eastern Paper Bag Co., supra.

The case of Halliburton Oil Well Cementing Co. v. Walker, 329 U.S. 1, 67 S.Ct. 6, 91 L.Ed. 3, is somewhat similar to the patent in suit. In that case Walker Patent No. 2,156,519 was for an improvement over a prior patent designed to measure the distance from the top of an oil well to the fluid surface of the oil. The patent was held invalid for failure of the claim to make a "full, clear, concise, and exact" description of the alleged invention required by Revised Statutes, § 4888, 35 U.S.C.A. § 33. The applicant for the patent described the most crucial element of the new combination in terms of what it would do rather than in terms of its own physical characteristics, and at no time did any of the claim suggest the physical structure of the acoustical resonator. The Court said, 329 U.S. at page 9, 67 S.Ct. at page 10: "We have held that a claim with such a description of a product is invalid as a violation of Rev.Stat. § 4888".

From the above it can be seen there can be no infringement of a patent if what is described in the patent application is not claimed.

If we disregard the drawings filed by plaintiff herein with its application and look only to the claims, we find plaintiff is claiming a patent on a sleeve "so shaped" that it will produce certain results. It seems to the Court that this comes within the decision of Halliburton v. Walker, supra.

Plaintiff makes no attempt to physically describe the structure. He says only that the sleeve is "so shaped" that it will produce certain results.

In The Incandescent Light Patent case, supra, the inventors discovered a carbonized paper that could be used for a filament in an electric light globe. However, instead of confining themselves to carbonized paper, as they might properly have done, they made a broad claim for every fibrous or textile material. The Court said, 159 U.S. at page 476, 16 S.Ct. at page 79, 140 L.Ed. 221: "* * * Under these circumstances, to hold that one who had discovered that a certain fibrous or textile material answered the required purpose should obtain the right to exclude everybody from the whole domain of fibrous and textile materials, and thereby shut out any further efforts to discover a better specimen of that class than the patentee had employed, would be an unwarranted extension of his monopoly, and operate rather to discourage than to promote invention."

In the case at bar it seems that plaintiff has traveled the same road, inasmuch as plaintiff claims a patent on a sleeve head "so shaped" that it will produce certain results. Plaintiff not only attempts to exclude all others from using a sleeve head as described in its drawings but also from the use of sleeve heads "so shaped" that they will produce the same results as plaintiff's patent in suit.

In General Electric Company v. Wabash Appliance Corp., 304 U.S. 364, 58 S.Ct. 899, 902, 82 L.Ed. 1402, plaintiff obtained a patent relating to a tungsten filament for incandescent lamps, based on Pacz Patent No. 1,410,499. Pacz discovered that a course grained tungsten filament was much superior to a tungsten filament of small grain and had a tendency to cure many of the defects of the tungsten filament then used. The claim set out that the grains must be "of such size and contour as to prevent substantial sagging and offsetting." Apart from the statement with respect to their function, nothing was said about the size or how the size was distinguished from the grains of earlier filaments. The Court said: "The claim uses indeterminate adjectives which describe the function of the grains to the exclusion of any structural definition, and thus falls within the condemnation of the doctrine that a patentee may not broaden his product claims by describing the product in terms of function."

And, as a consequence, the Court held the claim to be invalid on its face, as it failed to make a disclosure sufficiently definite to satisfy the requirements.

From the authorities, we are constrained to hold that Claims 1, 2, and 3 of Parker Patent No. 2,212,183 are invalid for uncertainty and failure to meet the requirements of Revised Statutes, § 4888, 35 U.S.C.A. § 33.

Defendants also claim that Parker Patent No. 2,212,183 is invalid for want of invention over prior art. As stated before sleeves are not new, and an examination of prior patents indicates that many changes have been made in the shape and form of the sleeve. There has been a constant search on the part of users and inventors to develop a coupling which would be entirely satisfactory, and even the latest developments in tube couplings have not produced entirely satisfactory results. There is no reason to assume experimentation on couplings and sleeves is at an end, and changes may be made in the future, as they have been in the past, changing the various angles of the sleeve flare and sleeve head. To establish a patent there must be more than mere mechanical skill, or as the Court said in Gomez v. Granat Bros., 9 Cir., 177 F.2d

266, at page 268: "* * * something akin to genius as distinguished from mere mechanical skill."

■ There are many instances in which patents have been claimed because of changes in contours. In the case of Boynton v. Chicago Hardward Foundry Co., 7 Cir., 77 F.2d 799, 802, the invention pertained to the process of making a mosaic tile for pavement, mural, and other decoration. Generally it disclosed the same method of making mosaics as did previous patents. It differed, however, in two details. The ridges of the matrix which formed the boundaries of the several inlays were triangular or V-shaped, the base of the triangle resting upon the floor of the matrix. In previous patents they were rectangular. It was claimed the vertical sides and the horizontal bottom would hold the pointed joints more securely than the triangular sides and apex-shaped bottom. The Court said: "We are of the opinion that inventive genius did not manifest itself in the use of rectangular instead of V-shaped ridges. That, at most, would involve nothing more than mechanical skill."

In Gomez v. Granat Bros, supra, the Court said: "* * * it has been recognized that if an improvement is to obtain the privileged position of a patent more ingenuity must be involved than the work of a mechanic skilled in the art. * * * That is to say the new device, however useful it may be, must reveal the flash of creative genius not merely the skill of the calling."

And in Thompson v. Boisselier, 1850, 114 U.S. 1, at page 11, 5 S.Ct. 1042, 1047, 29 L.Ed. 76, the Court said: "* * * it is not enough that a thing shall be new, in the sense that in the shape or form in which it is produced it shall not have been before known, and that it shall be useful, but it must, under the constitution and the statute, amount to an invention or discovery."

Again, in Hollister v. Benedict Manufacturing Co., 113 U.S. 59, 5 S.Ct. 717, 724, 28 L.Ed. 901, the Court held the invention not to be patentable, as it did not: "spring from that intuitive faculty of the mind put forth in the search for new results or new methods, creating what had not before existed, or bringing to light what lay hidden from vision," but that it evidenced only "the display of the expected skill of the calling" and involved "only the exercise of the ordinary faculties of reasoning upon the materials supplied by a special knowledge, and the facility of manipulation which results from its habitual and intelligent practice; * * *."

We have here a case in which the plaintiff is claiming patent on a flare in which he has changed the contours of the flare itself. Flares have been used for many, many years, and numerous changes have been made in the various angles thereof. Experimentation is constantly being carried on not only by plaintiff but also by others to determine whether or not a different angle in the flare of the sleeve or in the sleeve head is desirable. In fact, the defendants claim, among other things, that the AN Standard and the AC 811 couplings do not infringe plaintiff's patent because the angles of the sleeve head and the flare of the sleeve are different from those angles claimed by plaintiff.

In other words, it is defendants' contention that the Government in establishing a standard fitting did not follow the contours as claimed by plaintiff but established other contours which the Government evidently deemed superior to or an improvement on the previous contours and made them a requirement in the standard fittings. This is only another indication that there is a continuing and everlasting search on the part of inventors and users of tube couplings to develop a coupling superior to those now in use.

■ Plaintiff says, in its opening brief: "As frequently stated at the trial, the two important improvements of the Parker patent are the difference in angle between the outer wall of the sleeve and the inner wall of the nut which is termed the 'sleeve head angle' and the difference in angle initially between the inner angular surface of the sleeve head and the outer angular surface of the tube flare, which is termed the 'differential angle.'" We are of the opinion that the change in the angles be-

tween the outer wall of the sleeve and the inner wall of the nut and the outer surface of the sleeve head, and the outer angular surface of the tube flare, does not justify a monopoly. Consequently, judgment should be rendered herein holding that Patent No. 2,212,183 is invalid, and such will be the order. Findings in conformity herewith are to be prepared by defendants' counsel.