## ROCK–OLA MFG. CORP. v. CUSANO.
### Civ. 877.

United States District Court
D. New Jersey.
July 22, 1952.

Harry B. Rook, Newark, N. J. (John H. Bruninga, St. Louis, Mo., James A. Davis, New York City, of counsel), for plaintiff.

DeFazio, Davidson & DeFazio, Samuel J. Davidson, Hoboken, N. J. (Luther W. Hawley, Philip S. McLean, New York City, of counsel), for defendant.

HARTSHORNE, District Judge.

The crux of this case is whether or not defendant Cusano's patent falls within the prior art.

The complaint of the plaintiff, Rock-Ola Manufacturing Corporation, asks for a declaratory judgment by this Court in a diversity suit, under 28 U.S.C.A. §§ 1332 (a) (1), 2201, 2202, as to the invalidity of defendant Cusano's patent, with injunction accordingly, and for damages for unfair competition by Cusano against Rock-Ola. Cusano counterclaims, claiming the validity of his patent, asking injunctive relief, and an accounting. The American Shuffleboard Company, controlled by defendant Cusano, is joined as plaintiff on such counterclaim. Issues were joined and the trial held.

The facts, in substance, are that game boards such as shuffleboards, pool and billiard tables, and bowling alleys, are subject to constant warpage, due to humidity and other natural causes. This warpage obviously interferes seriously with the playing of such games. For many years, a series of patents had existed for the correction of this warpage, both in game boards, doors and other similar flat wooden surfaces. Among these patents were the Burrowes, 1,005,151, patented October 10, 1911, and the Compton, 1,677,707, patented July 17, 1928.[1]

Upon the basis of such Compton and Burrowes patents, Cusano created his warpage correction device in December, 1947, and applied for a patent thereon, this device being marketed by the American Shuffleboard Company as "Climatic Adjusters." In November, 1948, Rock-Ola created and marketed its similar device, known as "Rock-Ola Climatic Equalizers". Cusano obtained his patent No. 2,479,477 on his device August 16, 1949. Thereupon ensued

the usual notices from one side to the other, and to dealers and users, followed by the present litigation.

The primary question is the validity of the above Cusano patent. While subordinate issues exist on this question, the principal issue thereon is whether the Cusano device is covered by the prior art.

That the Cusano device is an improvement on the above Compton and Burrowes devices, is clear. But, of course, every improvement is not patentable. The general principles in that regard should, therefore, be borne in mind. As is stated, in Cuno Engineering Corp. v. Automatic Devices Corp., 1914, 314 U.S. 84, 91, 62 S.Ct. 37, 40, 86 L.Ed. 58 "'Perfection of workmanship, however much it may increase the convenience, extend the use, or diminish expense, is not patentable * *.' The new device, however useful it may be, must reveal the flash of creative genius, not merely the skill of the calling." And as is stated in Great A. & P. Tea Company v. Super Market Equipment Corp., 1950, 340 U.S. 147, 152, 71 S.Ct. 127, 130, 95 L.Ed. 162, "The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans." Accord Sinclair & Carroll Co. v. Inter Chemical Co., 1945, 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644. . As Judge Buffington well said:

"'Invention' is what rises to a higher plane than skill, both engineering and mechanical. * * * Substantial advance, marked improvement, progressive steps in an art, however beneficial, are not in themselves evidence of invention. They are to be expected, and, as the art progresses, more engineering skill, more mechanical progress, but less invention, are naturally to be looked for. It is when skill and progress stop abreast of an obstacle

---

1. Between 1915 and 1934 a series of other allegedly similar patents had been granted:

| | | | |
|---|---|---|---|
| Morton | 1,145,608 | Seavy | 1,462,724 |
| Filzer | 1,239,582 | Andler | 1,520,686 |
| | | Frease | 1,812,690 |
| | | Forsberg | 1,976,932 |

that inventive genius intervenes and invents."

Hansen v. Slick, 3 Cir., 1916, 230 F. 627, 632, 633.

■ This applies not only to original patents, but to improvements. Where the operating principle of the main patent is retained and the so-called improvements fall within the reach of ordinary mechanical skill, there is no patentable invention. From the earliest times it has been held that an improvement, to be patentable, must be in the principles of the machine, art or manufacture, and not merely in the form or proportions. Evans v. Eaton, Fed. Cas. No. 4560, C.C.Pa. 1816, affirmed 1822, 7 Wheat. 356, 5 L.Ed. 472. Patentable improvements in machinery may be made by changing some one or more forms of one or more parts, and thereby introducing some mechanical principle or mode of action not previously existing in the machine, and so securing a new or improved result. Winans v. Denmead, 1853, 15 How. 330, 56 U.S. 330, 342, 14 L.Ed. 717, 722. But a close copy which seeks to use the substance of the invention and although showing some change in form and position uses substantially the same devices, performing precisely the same offices, with no change in principle, is no patentable improvement. Ives v. Hamilton, 1876, 92 U.S. 426, 430, 23 L.Ed 494, 495. Note accordingly the application of these principles to the cases involving the improvements on wire wheels. In Wire Wheel Corp. of America v. Madison Motor Car Co., D.C.W.D.Wis.1920, 267 F. 220, the Court held this improvement patentable, since it "was not following but reversing, mechanical engineering practices and teachings". Though the previous decision holding this same improvement not patentable should also be noted. Wire Wheel Corp. of America v. C. T. Silver, D.C.S.D.N.Y.1919, 266 F. 221, affirmed 2 Cir., 1920, 266 F. 229. Again, an improved method of wood finishing was held patentable in Bruce Company v. Bradley Lumber Co. of Ark., D.C.W.D.Ark.1948, 79 F.Supp. 176, 181 because "the patentees disregarded the teachings of the prior art".

■ Thus, to be patentable, an improvement on an old device must not be one of mechanical skill, but one which introduces some new mechanical principle or mode of action, which indicates a flash of creative genius and thereby adds to the sum of useful knowledge. This genius is apparent when the improvement, instead of applying the teachings of the prior art, reverses such teachings.

■ Of course, the issue of a patent is prima facie evidence of validity, and the burden rests on one contesting this validity to overcome this presumption. Radio Corp. of America v. Radio Engineering Laboratories, 1945, 293 U.S. 1, 55 S.Ct. 928, 79 L.Ed. 163. But this presumption is not as strong where the alleged prior art patents were not considered by the Patent Office, as is the case here, with the Burrowes and Compton patents, and the bulk of those cited in footnote 1.

■ We turn to the application of these principles to the facts. This will be simplified, however, by first noting certain concessions by Cusano's counsel. It is conceded that there is no difference in the art of correcting the warpage in game boards and in doors. In other words, the problem of analogous uses is not raised here. It is further conceded that the fulcrum, which is specified in the Cusano patent as being that about which "the levelling bracket can tilt", is immaterial to the validity of such patent.

As above stated, the Burrowes, Compton, Cusano and Rock-Ola devices are all mechanisms whose purpose is to correct the natural warpage of game boards, such as shuffleboards. Each of these devices consists of a bracket or brackets fastened to the base of the shuffleboard transversely to its length. These brackets are drawn together or spread apart by the turning of nuts on threaded bolts or rods at their lower ends. When these nuts are so turned, force is applied through the brackets to the base of the board, and thence to its surface. This force tends to correct the warpage of the surface. More specifically, the force thus exerted by the turning of these nuts results, in each of these devices, in the creation of a horizontal force and a perpendicular force, each of which tends to correct this warpage. If the nuts

are turned one way, a convex warpage is corrected. If turned the other way, a concave warpage is corrected. The above holds true, not only as to the Cusano patent, and Rock-Ola's unpatented device, but as to the Compton and Burrowes patents, quite without regard to the others cited in the footnote, all of which are alleged to constitute prior art, so far as Cusano is concerned.

Furthermore, in the Burrowes patent, since the nut and the threaded rod are much further below the base of the board than in the Compton patent, the Burrowes device has as much greater effectiveness, in creating this perpendicular push-pull force, than has the Compton patent, as the distance of the Burrowes rod from the base of the board exceeds such distance in the Compton device. This is on the ordinary principles of leverage. And it is this push-pull force, perpendicular to the face of the board, which exerts the greatest effect in correcting the warpage of the board. So Cusano took advantage of this ordinary principle of leverage by placing his nuts and threaded rod at practically the same distance below the base of the board as did Burrowes. But, of course, thereby, and in every other mechanical principle and mode of operation so far noted, he was clearly making use of the prior art.

The sole basis for Cusano's claim, that he is not covered by the prior art, inheres in the fact that, instead of his brackets being fastened rigidly to the board throughout their length, they are fastened loosely to the board by hangers at their two ends. But in the end, the only difference this makes is, that with the Cusano device the board between these two ends is freer to move than it is in the Burrowes and Compton devices, where such devices are fastened to the board for that entire distance. However, the resultant push-pull force perpendicular to the board, as well as the resultant push-pull force horizontal to the board, is exactly the same in principle in all three devices. And except for the looseness of the bracket from the board in the Cusano device, the fact that this same force is applied at different points is immaterial, as Cusano's counsel admitted at the trial.

In short the sole difference between the Cusano device and the prior art is that, for some six inches between the ends of the bracket, the board is more free to yield to this same perpendicular force, applied in substantially the same mode, according to the same principle.

This difference is obviously an improvement, as it tends to some extent to make the warpage correction more equable. But the real question is whether this difference, in freeing the board between certain points, due simply to fastening the device at its two ends, rather than along its full extent, is a matter of mechanical skill or inventive genius. It would certainly seem that any mechanic would know that a bracket could be equally as well fastened to a board at the brackets' ends, as along its entire base. It would further seem that any mechanic should know that, if fastened only at its ends, the board, for the space between the ends of the brackets, would be left free to react to forces applied at such ends. How can this ordinary knowledge of an ordinary mechanic, let alone one "skilled in the art" be considered the proverbial flash of inventive genius? Does this change add to the store of useful knowledge in the world? Rather, the Cusano device would seem to be a mechanical improvement on the Compton and Burrowes patents, but one which uses the same principle, the same mechanical application of that principle, the same mode of operation, and one in which the parts function in the same way, and with similar, though improved, results. Such being the case, the Cusano device would appear to be within the prior art under the authorities.

In the above discussion, the fact that the Cusano device tilts, thereby creating its perpendicular push-pull force, has been assumed, any effect on this tilting as being due to the much discussed fulcrum being disregarded, in view of Cusano's concession that this fulcrum is immaterial. Rock-Ola claims that it does not tilt at all, its looseness from the base of the board being due simply to a tolerance, resulting from a mere machine fit between its bracket and its hangers. Rock-Ola thus claims it does not infringe upon Cusano, even in this way.

But this would seem immaterial, in view of the fact that, even with its tilting and looseness, the Cusano device is within the prior art.

Since the Cusano device is not patentable, the question becomes immaterial as to whether Cusano has invalidated his patent by his change in his patent papers as to the fulcrum, after his first application. Nor, since the Cusano patent is invalid, is it at all necessary to consider the similar, but not identic, question of an infringement by Rock-Ola on Cusano, based as it is on the now destroyed claim of the validity of the Cusano patent. Finally, it is understood from counsel that Rock-Ola no longer presses its claim for damages for unfair competition.

The facts herein stated and the conclusions of law herein expressed shall be considered the findings of fact and the conclusions of law required by Fed.Rules Civ. Proc. rule 52, 28 U.S.C.A.

Accordingly, it is hereby ordered, adjudged and decreed:

1. Plaintiff's complaint as to its first cause of action is sustained.

2. Plaintiff's complaint is dismissed voluntarily as to its second cause of action.

3. Defendant's counterclaim is dismissed.

4. Costs in this cause are taxed against defendant as to the first cause of action in plaintiff's complaint.

5. Costs in this cause are taxed against plaintiff on its complaint second cause of action.