## ROCK–OLA MFG. CORP. v. CUSANO et al.

### Nos. 10879, 10889.

United States Court of Appeals
Third Circuit.

Argued Feb. 5, 1953.

Decided Aug. 26, 1953.

552

Luther W. Hawley, New York City (De Fazio, Davidson & De Fazio, Samuel J. Davidson, Hoboken, N. J., Philip S. Mc-Lean, New York City, on the brief), for defendant and counter claimants-appellants.

John H. Bruninga, St. Louis, Mo. (Harry B. Rook, Newark, N. J., James A. Davis, Chicago, Ill., on the brief), for Rock-Ola Mfg. Corp., plaintiff-appellant.

Before BIGGS, Chief Judge, and GOOD-RICH and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

The plaintiff, Rock-Ola Manufacturing Corporation ("Rock-Ola"), brought this action for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, seeking a declaration of the invalidity of defendant Paul Cusano's patent (No. 2,479,477) and non-infringement by Rock-Ola's device, together with injunctive relief and damages for unfair competition.[1] The defendant Cusano filed his counterclaim, based upon the validity of his patent and infringement by Rock-Ola's device, and in this counterclaim was joined by the American Shuffleboard Company.[2]

The District Court, upon findings of fact, concluded that Cusano's device lacked invention over the prior art. 1952, 106 F. Supp. 723. Cusano appealed, at our No. 10,889. Rock-Ola filed a cross-appeal, at our No. 10,879, asserting non-infringement,

and invalidity of Cusano's patent because of amendments without supplemental oath broadening the claim after adverse rights of plaintiff intervened. Neither of the issues raised by Rock-Ola in its cross-appeal was reached by the District Court.

The issue upon which we dispose of the entire controversy between the parties is whether Cusano's device is the product of that imaginative ingenuity which is deservedly rewarded with the monopoly of letters patent. To hold that it is, we should be obliged to reach the conclusion that the findings of the District Court are "clearly erroneous", and without adequate support in the record. Graver Tank & Mfg. Co., Inc. v. Linde Air Products Co., 1949, 336 U.S. 271, 274–275, 69 S.Ct. 535, 93 L.Ed. 672. Not only are we unable to declare such error or inadequacy, but we are in full agreement with the findings and conclusions of the learned District Judge.

Cusano's device is a mechanical apparatus for the correction of warpage (due to atmospheric conditions) in game boards, such as shuffleboards. It consists of two T-shaped brackets mounted loosely on the underside of the game board in alignment transversely thereto. The legs of the T's are connected by a rod, with a nut on either side of the one leg. By adjusting the nuts, the brackets may be forced apart or drawn together. If drawn together, the inner ends of the brackets push upward and the outer ends pull downward, thus tending to correct a concave warpage. If forced apart, the outer ends of the brackets push upward, and the inner ends pull downward, thus tending to correct a convex warpage.

Cusano does not claim to be the first to provide means for correcting warpage or leveling of game boards, and the claims of his patent admittedly do not define a principle of operation. Rather, it is asserted that the claims set forth specific structural details, not disclosed by the prior art, which enable the device to act uniformly across the width of the shuffleboard to correct convex or concave warpage, and to

1. The claim based upon unfair competition was voluntarily dismissed.

2. This was accomplished by stipulation at pre-trial conference.

permit lateral expansion and contraction of the board without hindrance.

■■ More, however, is required for patentability than a change, no matter how improving, in the structural details disclosed by the prior art, Pyrene Mfg. Co. v. Urquhart, 3 Cir., 1949, 175 F.2d 408, 410, certiorari denied 338 U.S. 826, 70 S.Ct. 73, 94 L.Ed. 502. Indeed, it is a well-worn rule of patent law, that mechanical skill is not alone sufficient to convert an improvement, where operating principles are retained, into a patentable invention. Mandel Bros., Inc. v. Wallace, 1948, 335 U.S. 291, 69 S. Ct. 73, 93 L.Ed. 12; Sinclair & Carroll Oil Co., Inc. v. Interchemical Corp., 1945, 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644.

In the instant case, two prior patents, that of Compton (No. 1,677,707) and Burrowes (No. 1,005,151) disclose the operating principle of Cusano's device. Both showed a device which was attached to the underside of a game board along virtually its full width. Burrowes showed a T-shaped bracket approximately the same vertical elongation as Cusano's brackets. Both showed the use of a rod or bolt to achieve the movement of the brackets.

Cusano commenced his investigation of the problem, insofar as we are here concerned, with an adaptation of the Compton device, with which he was familiar. This adaptation consisted of the use of two L-shaped bars of metal attached across the width of the underside of the shuffleboard and connected by a bolt, which was threaded through the legs of the L.'s. Depending upon the direction in which the bolt was turned, the brackets were pulled together or forced apart. Cusano said he could easily see this device would not work on the stiff, massive, strong surface of a shuffleboard top because of inadequate pressure.[3] He attained the desired pressure through the ordinary principle of leverage, elongating the legs of the L's, and in so doing he also recognized the need for a strongly reinforced leg. It was also apparent to him that the desired result was not achieved because the flexing was confined to the very

narrow space between the two brackets.[4] And when he increased the pressure in order to flex the board, it split. The answer was to separate the brackets by widening the space between them, to allow a greater distribution of the pressure. By so widening the space and reducing the size of bracket attached to the underside of the board, he also freed that portion of the board to allow greater lateral expansion. We agree with the District Court, that this is all he accomplished when he separated the brackets and put them in hangers. The principle of the resulting push-pull force perpendicular to the board is the same with the hangers in brackets as that shown by Compton and Burrowes, and this is the most important single purpose of the apparatus. The placing of brackets in hangers is not new, nor does it in this device operate in any way different from other brackets in hangers. The tolerance for lateral expansion of the board when the device is not in use, gained by fitting the hanger loosely to the bracket is, we think, incidental in effect. In any event, it certainly does not attain the dignity of imaginative invention, but rests at the level of routine mechanical skill, as does the remainder of the device. See Great A. & P. Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162; Cuno Engineering Corp. v. Automatic Devices Corp., 1941, 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58, as well as those cases already cited.

■ Cusano relies upon commercial success, and the failure of his competitors to develop a device similar to his in the face of a need therefor. However, as we understand the law, such arguments, if true, may smooth over a doubt, but can never fill the gap created by the absence of inventive genius. Jungersen v. Ostby & Barton Co., 1949, 335 U.S. 560, 69 S.Ct. 269, 93 L.Ed. 235.

Finally, we agree with the District Court that the determination of lack of invention in Cusano's device renders it unnecessary to consider the issues raised in Rock-Ola's

---

3. Defendant-Counterclaimants' appendix, pages 37a–38a (Appeal 10,889).

4. Defendant-Counterclaimants' appendix, page 38a (Appeal 10,889).

appeal. Measurements Corp. v. Ferris Instrument Corp., 3 Cir., 1947, 159 F.2d 590, 592.

For the reasons stated, the judgment of the District Court will be affirmed.