**PYRENE MFG. CO. v. URQUHART et al.**

**No. 9309.**

United States Court of Appeals
Third Circuit.

Argued Dec. 5, 1947.

Reargued Oct. 8, 1948.

Decided May 31, 1949.

C. Brewster Rhoads, Philadelphia, Pa. (George G. Chandler, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., on the brief), for appellants.

Maxwell Barus, New York City, for appellee.

Before BIGGS, Chief Judge, and MARIS and KALODNER, Circuit Judges.

BIGGS, Chief Judge.

The suit at bar was brought by Pyrene Manufacturing Company ("Pyrene") pursuant to the Federal Declaratory Judgments Act, Act of June 14, 1934, Section 400 of Title 28 U.S.C. 1940 ed. [now 28 U.S.C.A. §§ 2201, 2202], against the Urquharts, seeking an adjudication that two United States Patents, Nos. 2,106,043 and 2,198,585, issued respectively on January 18, 1938 and April 23, 1940, to the Urquharts, are invalid and not infringed. Both patents are substantially identical as to specifications and drawings. The only difference between '043 and '585 is that the latter claims method only and specifies air, instead of gas generally, as one of the elements producing foam.

The Urquharts set up a counterclaim alleging infringement. Pyrene then asserted that the Urquharts had made an unlawful use of their patent monopoly. The court below found that the process or method claims of both patents were invalid. It held expressly that claims 12 and 14 of '043, and, inferentially, that the two method or process claims of '585 (which contained only these two claims), were infringed if valid. It decided also that the apparatus claims were invalid and not infringed. The court concluded that the Urquharts' counterclaim was barred by reason of misuse of the patents. See 69 F.Supp. 555. The Urquharts have appealed.

Both patents deal with the art of creating foam by *mechanical,* as distinguished from *chemical,* means to extinguish fires. Fire fighting foams are of two kinds. "Chemical" foam is created by the use of reactive chemicals reacting in a foam stabilizer such as saponin. In brief an acidic chemical such as aluminum sulphate is injected into a solution of bicarbonate of soda with saponin. The reaction between the sulphate and the soda creates bubbles of gas which are enmeshed in the saponin or other stabilizer creating foam. The foam is thrown on the fire by a hose and nozzle. "Mechanical" foam is created by agitating or rendering turbulent a jet of water and saponin in the presence of noncombustible gas or air and enmeshing the resulting bubbles in the saponin thereby creating foam. This is thrown on the fire by a hose and nozzle. The Urquharts cannot contend that the idea of mechanical foam originated with them for it is clear that three earlier patents to Wagener, British No. 272,993, of 1927, United States No. 1,821,914 and German No. 521,973, both of 1931, disclosed the conception of the creation of mechanical foam, as dis-

tinguished from chemical foam, for fire-fighting. The Urquharts contend, however, that none of the Wagener patents referred to discloses an operable method or apparatus and therefore cannot be deemed to be anticipatory.

A careful examination of the record convinces us that the question of the validity of the process or method claims is a narrow one. It makes no difference insofar as the validity of the Urquhart patents is concerned whether non-combustible gas or air be employed and what we shall state in reference to '043 is equally applicable to '585. Claim 12 of '043 may be deemed to be typical of all the process claims. It is as follows: "Method of producing a fire-extinguishing foam which comprises ejecting one or more high velocity streams of liquid from a corresponding number of nozzles[1] in such manner as to impart a high degree of turbulence to the body of said stream of liquid, thereby finely subdividing the same, and entraining gas into and by means of the resulting stream of subdivided liquid in the presence of a foam-promoting agent."

We shall endeavor as briefly as possible, and at the risk of oversimplification, to point out the gist of the Urquharts' disclosures. Air or gas is brought into the foam-forming chamber[2] where it comes in contact with a jet or foam-forming liquid, saponin mixed with water or some other stabilizer which emerges from a nozzle inserted about midway the chamber's end. See No. 12 in Fig. 1 of '043. Actually as we have indicated the patent teaches a method of making fire foam by injecting air into a stream or jet consisting of stabilizer and water, not merely having the stream carry along some air in the form of spray. The mechanical device shown by the Urquharts by which this is accomplished "accurately answers", as the court

below put it, at page 558 of 69 F.Supp., to the description of a water-jet air-pump. In fact the foam-forming chamber and the nozzle, at No. 12 of Fig. 1 of '043, by which the stream is brought into the chamber, plus the other adjacent elements at Nos. 10, 11 and 14 merit no other description. It is clear that the water-jet air-pump is old in the pumping art.

The specification of '043 points out that it is "desirable" that there be "a spiral or other suitable baffle means", shown at No. 13 in Fig. 1, in the nozzle of No. 12, through which the mixture of water and saponin comes into the chamber, because this will cause a turbulent flow of the mixture and insure good contact between it and the gas or air.[3] But the specification also states that the " * * * action [taking place in the nozzle because of the spiral or baffle] is not absolutely necessary for the present invention but is advantageous."[4] This concession is a necessary one for the record demonstrates clearly that good mechanical foam can be made by a proper adjustment of the nozzle in the chamber, both as to size and to position, to the conical exit passage or tail piece of the chamber whence the foam by means of hose and nozzle is thrown on the fire. It follows, therefore, as we read the Urquharts' specifications, that it is not an essential element of their disclosures that the nozzle of the mixing chamber be spiraled or contain a baffle to aid in the subdivision of the liquid.

What then is left of the Urquharts' disclosures when faced with those of the Wagener patents? The witnesses for the Urquharts insist that the nozzle of Wagener's foam chamber is an "injector"[5] and therefore has a smooth bore. If it has a smooth bore, they say, it could not bring a liquid to a proper turbulence whereby it could entrain or enmesh sufficient air to

---

[1] It should be pointed out for the sake of clarity that the nozzle or "nozzles" referred to in claim 12 are inserted in a foam-forming chamber in which air is enmeshed or entrained by the saponin or other stabilizer to form bubbles. The nozzle is not the nozzle from which foam is thrown on the fire.

[2] The foam-forming chamber is set out simply in Fig. 1 of '043.

[3] Lines 20 to 25 of column 2, p. 1, of '043.

[4] Lines 40 to 43 of column 2, p. 1.

[5] The actual words as they appear in Wagener's United States Patent No. 1,-821,914, p. 1, column 1, lines 18 and 19, are, " * * * a water-jet air-pump, an *injector* or the like." (Emphasis added.)

make a good foam. But not only is this assertion contradicted, as we have said, by evidence which the court below found credible, but it is virtually obliterated by the Urquharts' admissions in the specifications that a spiral or baffle in the nozzle of the chamber while "advantageous" for creating foam is not "absolutely necessary".

 We must conclude, therefore, that Wagener's patents do constitute an anticipation of Urquharts' disclosures. Wagener's United States Patent No. 1,821,-914 states, "My invention relates to a method of producing foam for fire extinguishing purposes. My improved method consists in intimately mixing by mechanical means, steam,[6] gas or a gas mixture, such as air, with a liquid containing a foam forming agent. This method may, for example, be carried out by allowing the liquid containing the foam generator to issue, in the form of a *fine* jet under pressure,[7] from a nozzle and causing it to suck in the gas or the like to be admixed in the liquid, by the suction action of this jet. Or if desired steam, gas or a gas mixture, such as compressed air, may be allowed to issue through a nozzle and the jet of the gaseous medium caused to suck in the liquid containing the foam generator. This may be accomplished, for example, by a water-jet air-pump, an injector or the like." See note 5, supra. Wagener disclosed a process or method so similar to that of the Urquharts that it is clear that he forestalled them in all essential respects.

It is possible, indeed it is probable, that the Urquharts by putting a baffle plate or spiral in the nozzle of the chamber did entrain more air and did perhaps effect a finer subdivision of the air with the fluid, a closer mix of air and stabilizer. It is probable that the Urquharts achieved greater "turbulence" than can be effected by the Wagener method or apparatus albeit Mr. McNulty, testifying for Pyrene, stated that he had achieved good foam with apparatus like Wagener's and by employing his method. But this is not the point. Improvement will not sustain invention and at most the insertion of a baffle or spiral in a nozzle can constitute nothing more than mechanical ingenuity.[8]

We are not unmindful of the importance of "throw". Since gasoline and oil fires are exceedingly hot it is of course most desirable to have the operator stand as far away from the blaze as is possible while spraying it with foam. Captain Burke, testifying for the Urquharts, stated that with less subdivision of the stream more throw could be achieved. It would appear, therefore, that relative adjustment between subdivision of the air-entraining stream and desired range of throw is necessary. Range of throw, as the record amply demonstrates, also depends to a considerable degree on the pressure maintained within the foam-forming chamber or pump. This fact is one which is well known to engineers. Mr. McNulty stated that with the Wagener device he achieved a throw of at least twenty feet which, it must be conceded, is a good range. The throw achieved by the Urquharts certainly exceeded this and their process is correspondingly superior. But we state again that improvement of a disclosed process cannot constitute invention.

The Urquharts are entitled to claim a very substantial measure of commercial success for their process. They point out the fact that the Wagener disclosures remained dormant for many years while their own process has been copied extensively by manufacturers of fire fighting equipment such as Pyrene. There also is no doubt that the Urquharts' process was extensively and successfully used during World War II, particularly by the United States Navy. But it is well established that commercial success, though of aid in establishing inven-

---

6 It should be pointed out that it is conceded that steam will not form foam. This does not invalidate the balance of Wagener's disclosure or render it inoperable.

7 Emphasis added.

8 This was put very well by Judge Kirkpatrick when he said, 69 F.Supp. at page 557: "* * * no engineer was ignorant of the fact that a stream of water issuing from a nozzle will be dispersed to varying degrees by roughness of the interior, or by a spiral or baffles or by the shape of the nozzle itself * * *."

tion in a doubtful case, cannot serve as a base for establishing invention. Here the case is not a doubtful one. We are of the opinion, as was the court below, that the reason why the Urquharts' process has achieved substantial commercial success was the cheapening of stabilizers.

Little need be said respecting the validity of apparatus claims of '043, of which claim 11 is typical.[9] In these the Urquharts have patented a combination consisting of an arrangement in series of a mechanism for premixing water and stabilizer connected with a water-jet air pump. The water-jet air pump mechanically injects air into the mix, creating foam as described in the process claims. But Burmeister's British Patent, No. 251,950 of 1927, discloses a very similar arrangement to supply a premixture of water and stabilizer to an ejector which sucks in gas-producing chemicals thereby converting the premix into chemical foam. As we have said there is small difference between an injector and a water-jet air pump. Mr. Gordon Urquhart conceded that in the series arrangement disclosed in '043 there is no substantial coaction between the old premixing equipment and the water-jet air pump or foam-forming chamber. Indeed it is clear that any coaction is so remote as to be immaterial. The fact is that the premixing equipment of the old art of making chemical foam functions in an identical manner whether it be connected to a water-jet air pump introducing gas-producing chemicals to create chemical foam or to a pump for introducing air to make mechanical foam. Clearly no invention is disclosed here. Moreover, the apparatus claims are void as functional. See Halliburton Oil Well Cementing Co. v. Walker, 329 U.S. 1, 67 S.Ct. 6, 91 L.Ed. 3; Leeds & Catlin v. Victor Talking Machine Co., 213 U.S. 301, 29 S.Ct. 495, 53 L.Ed. 805; and In re Garratt, 63 F.2d 113, 20 C.C.P.A. (Patents) 878.

We entertain no doubt that the patents sub judice are invalid for the reason stated. It follows that the Urquharts' counterclaim for infringement falls with it the defense asserted by Pyrene that the Urquharts have abused their patent monopolies. Upon consideration of the entire subject matter we have reached the conclusion that it is unnecessary to pass upon the question of abuse of patent monopolies and shall not do so.

The judgment of the court below will be affirmed.

---

[9] As follows: "Apparatus for producing foam, comprising means for supplying a foam-forming material, means for passing a stream of water through a constricted opening, a chamber receiving such stream of water and connected to the means for supplying the foam-forming solution, whereby the water withdraws the solution therefrom, means for ejecting the resulting liquid at high velocity from a nozzle in such manner as to impart a high degree of turbulence to the body of said stream of liquid, thereby finely subdividing the same, and means for entraining a gas into and by means of the resulting stream of subdivided liquid."