WAGNER IRON WORKS, Appellant,

v.

KOEHRING COMPANY, a Wisconsin Corporation, Appellee.

WAGNER IRON WORKS, Appellant,

v.

HENRY MANUFACTURING COMPANY, Inc., Appellee.

Nos. 6267, 6268.

United States Court of Appeals Tenth Circuit.

Aug. 19, 1960.

S. L. Wheeler, Milwaukee, Wis. (J. E. Schroeder, Kansas City, Mo., and Joseph P. House, Jr., Milwaukee, Wis., on the briefs), for appellant.

Gordon D. Schmidt, Kansas City, Mo. (Hovey Schmidt, Johnson & Hovey, Kansas City, Mo., W. A. Denny, Milwaukee, Wis., John A. Hamilton, Kansas City, Mo., L. M. Cornish, Jr., Raines, Glenn & Cornish, Clayton M. Davis, DuMars, Davis & Bennett, Topeka, Kan., on the brief), for appellees.

Before MURRAH, Chief Judge, and PHILLIPS and BREITENSTEIN, Circuit Judges.

PHILLIPS, Circuit Judge.

Wagner Iron Works[1] brought two actions for alleged infringement of Patent No. 2,722,324, applied for September 30, 1954, and issued November 1, 1955, one against Shawnee Manufacturing Company, Inc.[2] and the other against Henry Manufacturing Company, Inc.[3] The cases were consolidated for trial. The claims in suit are 1, 12, 13 and 21. The trial court concluded that such claims were not valid and were not infringed by Shawnee or Henry and entered its judgment accordingly. Iron Works has appealed.

After the appeal was lodged in this court, Koehring Company, having acquired the properties of Shawnee, was substituted as a party appellee.

The specification of the patent in suit states that it relates to "hanger bracket pump mountings for tractors equipped with loader frames." The specification refers to apparatus in which "the hydraulic pump which powers the boom and other tractor attachments is

---

1. Hereinafter called Iron Works.

2. Hereinafter called Shawnee.

3. Hereinafter called Henry.

mounted on the base or loader frame of the tractor" and further states:

"* * * This pump receives power from the engine drive shaft through an extension shaft having a flexible coupling to accommodate for movment of the frame respecting the tractor when the frame is stressed under load or otherwise. In actual practice the coupling is frequently damaged by excessive frame movement, and it has been a source of equipment breakdown.

"It is the object of the present invention to re-locate the pump and to mount it directly from the tractor and, specifically, upon the hanger plate to which the underslung U-shaped member of the loader frame is connected. The re-located pump, accordingly, receives direct support from the tractor and is not subject to stresses imposed upon the loader.

"The invention consists in mounting the loader system pump in fixed relation to the tractor and in alignment with the tractor drive shaft and upon a platform specially provided on the hanger plate aforesaid. In one embodiment of the invention the U-shaped member of the loader frame is rigidly connected to the bracket to transmit bending stresses in the loader frame directly to the tractor. In another embodiment of the invention the U-shaped member of the loader frame is pivotally connected to the hanger bracket to relieve the tractor from such bending stresses."

Claims 1, 2 and 3 of the patent read:

"1. A hanger plate for attachment to a tractor having a loader frame subject to bending stress and a forwardly projecting drive shaft, said plate being provided with means for releasably mounting it on the tractor, a platform forwardly extending from said plate and mounting means on the platform to which a pump may be secured through said platform and hanger plate directly to said tractor and in alignment with said tractor drive shaft, said hanger plate further comprising means for mounting said loader frame on the tractor independent of said pump mounting means whereby bending stresses imposed on the loader frame are transmitted directly to the tractor without affecting the pump and its alignment with the tractor drive shaft.

"2. The device of claim 1 in which said loader mounting means comprises means for rigidly mounting the loader to the hanger plate.

"3. The device of claim 1 in which said loader mounting means comprises means for pivotally mounting the loader to the hanger plate."

Claims 12, 13, 15 and 16 of the patent read:

"12. In combination, a tractor having a forwardly projecting power take-off shaft, a loader frame and a hydraulic system requiring a pump for its operation, means supporting the loader frame detachably on the tractor and including a bracket in rigid connection with the front of the tractor and having a releasable connection with the loader frame, certain portions of the frame being yieldable for relative movement respecting the bracket, a pump for said hydraulic system provided with a rigid mounting to said bracket independently of yieldable portions of the frame and having a drive shaft coupled with the tractor power take-off shaft, and hydraulic connections carried by the frame and having inlet and outlet connection with the pump and flexible to accommodate such yielding without affecting the pump or coupling.

"13. The device of claim 12 wherein the connections of the pump to the bracket are independent of the connections of the loader frame to the bracket.

"15. The device of claim 12 in which the releasable connection from

the bracket to the loader frame is rigid.

"16. The device of claim 12 in which the releasable connection from the bracket to the loader frame comprises a pivot."

Claim 21 of the patent reads:

"21. In a device of the character described, a combined tractor loader frame hanger and mounting for a pump, comprising a plate, means for connecting the plate to the tractor, a platform projecting forwardly from said plate and comprising means upon which said pump may be mounted, said plate being further provided with depending means for the connection thereto of said loader frame."

It is obvious that Claim 2 is intended to embrace, in addition to the elements set forth in Claim 1, an element not included in Claim 1, to wit, means for rigidly mounting the loader to the hanger plate.

It is obvious that Claim 3 is intended to embrace, in addition to the elements set forth in Claim 1, an element not included in Claim 1, to wit, means for pivotally mounting the loader to the hanger plate.

It is obvious that Claim 15 is intended to embrace, in addition to the elements set forth in Claim 12, an element not included in Claim 12, to wit, a rigid connection of the loader frame to the bracket.

And it is obvious that Claim 16 is intended to embrace, in addition to the elements set forth in Claim 12, an element not included in Claim 12, to wit, a pivotal connection of the loader frame to the bracket.

It follows that neither Claim 1 nor Claim 12 embraces either the element of rigid mounting of the loader frame on the plate or the element of pivotal mounting of the loader frame on the plate. That is also true of Claim 21.

In the commercial device of the patent in suit, the plate is rigidly attached to the front portion of the frame of the tractor. A bracket which embraces a platform is welded to the plate. The pump is mounted on the platform, with its drive shaft in alignment with the drive shaft of the tractor motor. The drive shaft of the tractor motor is extended and is releasably connected with the drive shaft of the pump. An underslung U-shaped portion of the loader frame, which extends beneath the tractor body, embraces a bracket welded to such U-shaped portion and such bracket is bolted to the plate by three bolts. The holes in the bracket and plate through which the three bolts extend are larger than the bolts, so as to permit a limited movement of the loader frame relative to the plate. Clearly, the bolt mounting is not a pivotal mounting nor the equivalent of a pivotal mounting.

Each of the alleged infringing devices mounts the pump on a bracket rigidly attached by bolts to the front portion of the tractor frame and each employs an extended drive shaft of the motor connected to and in alignment with the drive shaft of the pump. In the Shawnee device the transverse section of the U-shaped member is slidably mounted in a channel. The channel is composed of three plates welded together at right angles, leaving the front side open. The channel is mounted on a bracket which is attached to the front end of the motor frame and which bracket also carries the pump.

In the alleged infringing device of Henry, a plate is rigidly mounted on the front portion of the tractor frame, to which is attached the bracket which carries the pump. The transverse section of the U-shaped portion of the loader frame is attached to the plate by two pivots, one near each end of such transverse section. The pivots are formed by a sleeve attached to the bracket and a round, pinlike member with a head which extends through the transverse section into the sleeve. It will thus be seen that both infringing devices have means by which the U-shaped portion of the frame may move relative to the member to which it is attached.

Section 112 of the Act of July 19, 1952, an Act to revise and codify the laws relating to patents and the patent office (35 U.S.C. § 112) in part reads:

"The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

* * * * * *

"An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."

Section 103 of such Act in part reads:

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. * * *"

The specification describes means for rigidly connecting the U-shaped member of the loader frame to the plate or bracket attached to the front portion of the tractor frame. It also describes means for pivotally connecting the U-shaped portion of the loader frame to the plate or bracket attached to the front portion of the tractor. Other than the pivotal mounting, the specification wholly fails to describe any method, manner or means of mounting the U-shaped portion of the loader frame, or any other portion of the loader frame, on the bracket or plate attached to the front portion of the tractor frame, so as to provide yieldability of the frame for relative movement respecting the bracket or plate. As stated above, neither Claim 1 nor 12 embraces the element of a pivotal mounting of the loader frame on the plate or bracket. That is likewise true of Claims 13 and 21.

The elements of Claim 12 are:

1. A tractor having a forwardly extending power take off shaft;

2. A loader frame and a hydraulic system requiring a pump for its operation;

3. Means supporting the loader frame detachably on the tractor and including a bracket in rigid connection with the front end of the tractor and having a releasable connection with the loader frame;

4. A pump for the hydraulic system, provided with a rigid mounting to said bracket independently of yieldable portions of the loader frame and having a drive shaft coupled with the tractor power take off shaft;

5. Hydraulic connections carried by the loader frame and having inlet and outlet connections with the pump and flexible to accommodate such yielding without affecting the pump or coupling.

The applicant for the patent also undertook to include an additional element in Claim 12 by use of the following language: "Certain portions of the (loader) frame being yieldable for relative movement respecting the bracket."

It will be observed that the quoted language is nothing more than a statement of a function or result. Neither the specification, drawings, nor the claim describes in any manner the means, method, or manner for producing such function or accomplishing such result. The quoted provision does not include the statutory language, "a means * * for performing," or any like language. But even were we to disregard that deficiency in the claim, it would still be fatally defective, because there is no

"corresponding structure, material, or acts" described in the specification or drawings.

■ It is well settled that a "patentee may not by claiming a patent on the result or function of a machine extend his patent to devices or mechanisms not described in the patent. * * * " [4]

■ While § 112, supra, permits a claim for a combination to be expressed as a means of performing a specific function, a statement of function, effect, or result does not broaden the claim or a portion of the claim beyond the corresponding structure described in the specification, nor beyond the invention and the manner of making and using it, described in the specification.[5]

The inadequacy of the description referred to above becomes all the more important when, as we shall later undertake to show, the specification used "conveniently functional language at the exact point of novelty." [6]

Accordingly, we conclude that the portion of Claim 12 last quoted above adds nothing to the claim and does not extend the patent to devices or mechanisms which might obtain the function or result set forth in such quoted language, which were in nowise described in the patent.

It follows that we must exclude from consideration of the claims here in suit any means for flexibly mounting the U-shaped portion of the loader frame on the plate or bracket by pivots or by the use of bolts which are smaller than the holes through which they extend.

The narrow question then presented is whether the concept which embraces the plate rigidly attached to the front portion of the tractor frame, the bracket attached to such plate, the platform on the bracket, the hydraulic pump mounted on such platform, with its shaft in alignment with and connected to the extended shaft of the motor, and the mounting of the U-shaped portion of the loader frame on the bracket or plate, arose to the dignity of invention.

The proof established that the invention covered by the patent was conceived by Werner and Wagner, Iron Works' assignors, shortly before May 15, 1951. Prior to that date, Iron Works was manufacturing the Simmonds loader frame for Dearborn Motors Corporation, the owner of Simmonds Patent No. 2,495,144, issued January 17, 1950, and was also manufacturing loader frames for other customers. Iron Works mounted the hydraulic pump on the front end of the loader frame. Stresses generated by the loader frame caused excessive breakage of the pump drive shaft, with resultant injury to other portions of the equipment. Werner and Wagner, executives of Iron Works, undertook to design a loader frame and pump that would solve the problem. The experimental work was done by employees of Iron Works under the direction of Werner and Wagner and resulted in a device substantially like the commercial device of the patent in suit, described above. The new loader frame and pump were placed on the market prior to May 15, 1951, and the first work was done on the manufacture of the commercial device about May 15, 1951. The experimental device manufactured under the direction of Werner and Wagner and the commercial devices employed ⅝ inch bolts and ¹¹⁄₁₆ inch holes to mount the transverse section of the U-shaped member of the loader frame on the plate.

The reason for the failure to describe such method of mounting in the specification or elsewhere in the patent is not entirely clear. Werner testified that they did not conceive the idea of em-

4. Holland Furniture Co. v. Perkins Glue Co., 277 U.S. 245, 257, 48 S.Ct. 474, 479, 72 L.Ed. 868; Philip Sitton Septic Tank Co. v. Honer, 10 Cir., 274 F.2d 811, 813.

5. General Electric Co. v. Wabash Appliance Corp., 304 U.S. 364, 371–373, 58 S.Ct. 899, 82 L.Ed. 1402; Doran Coffee Roasting Co. v. Wyott Manufacturing Co., 10 Cir., 267 F.2d 200, 202.

6. Halliburton Oil Well Cementing Co. v. Walker, 329 U.S. 1, 8, 9, 67 S.Ct. 6, 10, 91 L.Ed. 3; General Electric Co. v. Wabash Appliance Corp., 304 U.S. 364, 371, 58 S.Ct. 899, 82 L.Ed. 1402.

ploying bolts smaller than the holes through which they extended, but that such clearance was in the holes from their initial construction. It may be, therefore, that they did not deem that type of mounting as important when the patent was applied for. However, Mr. Werner expressed the opinion in his testimony that the movement made possible by such type of mounting contributed "to the absorption of the stresses and strains" generated by the loader. Werner admitted that there was no suggestion in the patent for a mounting of the transverse section on the plate by means of bolts smaller than the holes through which they extended and that on the contrary the patent suggested a rigid mounting of the transverse section of the loader frame on the plate.

The concept of mounting the hydraulic pump on a bracket rigidly attached to the front portion of the frame of the tractor, with the pump drive shaft in alignment with and connected to an extension of the drive shaft of the tractor was not new, when in 1951 Werner and Wagner conceived the device of the patent in suit. It was disclosed by Machin in his Patent No. 2,479,048, applied for October 16, 1946, and granted August 16, 1949, assigned to Ottawa Steel Products, Inc. In his specifications Machin stated, "I provide a pump supported on the tractor frame by brackets by bolts or the like. A shaft extends through a bushing secured to the bracket members by bolts or the like and engages within a connecting collar on the end of the extension shaft having a universal joint connection with the crank shaft of the tractor * * *."

In Drawing No. 5 of his patent, Machin illustrates a pump mounted on a bracket, which bracket is rigidly attached to the frame of the tractor and an extended drive shaft of the pump in alignment with the crank shaft of the tractor and the two shafts connected by a universal joint.

Moreover, in 1946 Ottawa Steel Products was engaged in the manufacture of front end loaders for farm tractors in which the hydraulic pump was mounted on the loader frame and experienced shaft breakage resulting from shaft misalignment caused by stresses generated by movements of the loader frame.

To meet that problem the engineers of Ottawa Steel Products in 1947, following the teaching of Machin, mounted the pump on the front portion of the tractor frame by means of a "pump plate strut support assembly," rigidly mounted the loader frame on the plate support assembly, positioned the pump so its drive shaft was in line with the drive shaft of the motor and connected the two drive shafts by a flexible coupling. They thus solved as early as 1947 the problem of pump drive shaft breakage and resulting damage caused by misalignment of the pump drive shaft.

Thus it will be seen that the only novelty in the device conceived and built by Werner and Wagner was the mounting of the loader frame on the plate by means of bolts that were smaller in diameter than the holes through which they extended, thus permitting the limited movement by the loader frame relative to the plate—a mounting not described nor validly claimed in the patent. Moreover, we are of the opinion that it would be obvious to an ordinary mechanic, skilled in the art, that the problem of pump crank shaft breakage resulting from mounting the pump on the loader frame and the transmission of loader frame stresses to the pump crank shaft would be solved by rigidly mounting the pump on the front portion of the tractor frame, mounting the transverse section of the U-shaped member of the frame on such tractor frame and aligning the pump drive shaft and the tractor drive shaft and connecting them together, so that stresses which would cause the motor drive shaft to move would cause the same movement of the pump drive shaft and thus keep the two drive shafts in fixed relation, whereby misalignment of the shafts would be avoided.

Accordingly, we conclude that the claims in suit are invalid for want of invention.

Mr. Werner testified that sales were made of the device of the patent in suit "some time earlier than May 15," 1951. The patent recites:

"This application is a continuation-in-part of our co-pending application, Serial No. 357,284 filed May 25, 1953, now abandoned, and entitled 'Pump Mounting.'"

We do not pass on the question not raised by counsel, but which lurks in the record, as to whether Werner and Wagner were not entitled to the patent, because the device of the patent in suit was "in public use or on sale in this country, more than one year prior to the date of the application for patent. * * *" See 35 U.S.C., 1946 Ed., § 31 and 35 U.S.C.A. § 102.

The judgment is affirmed.