50 CCPA
### Application of Joseph D. FISHER.
### Patent Appeal No. 6783.

United States Court of Customs
and Patent Appeals.
March 29, 1963.

For majority opinion see 307 F.2d 948.

Frank T. Barber, Carl C. Batz, Chicago, Ill. (George R. Jones and Beale & Jones, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Jack E. Armore, Washington, D. C., of counsel), for the Commissioner of Patents.

On Appellant's Petition for Rehearing.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

RICH and SMITH, Judges, dissenting from denial of petition with opinions.

RICH, Judge (dissenting).
1. I dissent from the denial of the Petition for Rehearing.
2. Though I was one of the majority, when this case was handed down on 21 September 1962, which held that the claims do not *define* the invention with the "particularity required by 35 U.S.C. 112," second paragraph, the petition has persuaded me that such holding was erroneous. The Patent Office memorandum in opposition to the petition further convinces me that the decision made was erroneous. I therefore feel obliged to withdraw from the majority.

While I agree with the points made in Judge Smith's former and present dissenting opinions, I wish to make a few additional points relative to the law as applied by the majority, to which end I write the following:

My main objection to the court's opinion is the application made of General Electric Co. v. Wabash Appliance Corp., et al., 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402, (hereinafter "Wabash"). I agree that the Wabash claims were bad because, as the Court held, they were so *broad* in their terminology that *they did not distinguish from the prior art,* but I do not agree with the majority here that part [A] of Fisher's claim is "comparable to" the Wabash claims. The Wabash case rested in part on the Perkins Glue [1] case and I agree that the claims

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28, United States Code.

I. Holland Furniture Company v. Perkins Glue Company, 277 U.S. 245, 48 S.Ct. 474, 72 L.Ed. 868.

there were bad too, because they claimed *any* starch glue "having substantially the properties of animal glue," and were considered by the Court to claim any starch glue "as good as" animal glue.

The composition here seems to be one which cannot, as a practical matter, at the present stage of development of this art, be specifically defined by a formula. It is here being defined in terms of its properties—properties which, unlike Wabash, do distinguish it from the prior art; and, unlike Perkins Glue, they are not in terms merely of being "as good as" some *known* material.

In spite of the fact that the claim here is wholly unlike the claims in Wabash or in Perkins Glue (while very like the claims in the Parke-Davis[2] and Merck & Co.[3] cases the majority refuses to follow), it clearly appears that the sole ground of the majority's decision is the *dictum* in the Wabash case about "functional language at the exact point of novelty."[4] This is not my interpretation alone; the Patent Office brief opposing the petition says:

> * * * *the basis* of the Court's decision * * * is that the claims "do not particularly point out and distinctly claim the alleged invention as required by 35 U.S.C. 112" *in that they use "conveniently functional language at the exact point of novelty."* [Emphasis mine.]

I wish to show why this is not enough to condemn a claim.

It was this precise phrase from the Wabash case, as used again in the later Halliburton[5] case, 329 U.S. 1, 67 S.Ct. 6, 91 L.Ed. 3, that was behind the writing into the statute of the 3rd paragraph of section 112, as I will show presently. But first I call attention to a passage in Wabash not mentioned in the majority opinion:

> "A limited use of terms of *effect* or *result*, which accurately define the essential *qualities of a product* to one skilled in the art, may in some instances be permissible and *even desirable*, but a characteristic essential to novelty may not be distinguished from the old art *solely by its tendency to remedy the problems in the art* met by the patent. And we may *doubt* whether the *language used in Claim 25*, taken by itself, *conveyed definite meaning to those skilled in the art* of incandescent lighting."
> [My emphasis.]

Here it seems clear that the language of Fisher's claims, as well as the language of his specification, does convey definite meaning. As to the first sentence of the above quotation, truly the distinction set forth is a subtle one, but it seems to me that Fisher's claims define *qualities of his product,* not merely what his product is intended to *accomplish* and are not merely in terms of *remedying problems* in the art. What was it his

2. Parke-Davis & Co. v. H. K. Mulford & Co., 196 F. 496 (C.A.2d 1912). Adrenalin patent claims sustained.

3. Merck & Co., Inc. v. Olin Mathieson Chemical Corporation, 253 F.2d 156, (C.A.4th 1958). Vitamin B$_{12}$ claims sustained.

4. I say it is dictum because the Wabash claims were held to read on the prior art. Another important fact behind the *decision* in the Wabash case, seemingly overlooked, is that the product attempted to be claimed *was not adequately described in the specification*. The ma-

jority opinion appears to attach a *per se* stigma to the statements of function used by appellant in the instant claims; it fails to consider whether such statements are properly grounded in the description of the invention in the specification. Even prior to the enactment of the third paragraph of 35 U.S.C. § 112, such a consideration was thought pertinent in cases like the instant case. See, e. g. the Wabash case at 304 U.S. 373, 58 S.Ct. 903, and cases cited therein.

5. Halliburton Oil Well Cementing Co. v. Walker, et al., 329 U.S. 1, 67 S.Ct. 6, 91 L.Ed. 3.

ACTH product was to accomplish? The answer to that question will show what would be *true* "functionality." A good example of such functionality is the Perkins Glue claims, a starch glue *"as good as* animal glue," (my emphasis) as the Supreme Court read the claims. We have nothing like that here.

The majority opinion seems to me to be dogmatic on the point that "functional language at the exact point of novelty," which I believe the majority mistakenly construes to mean at *any* novel point, is a clear rule and controls *this* case—and would control any other case involving claims which happen to contain that supposed vice. But such is not the law now, if it *ever* was, even at the time the Wabash case was decided. For the convenience of the interested, I have collected below extracts from commentators on some of the new aspects of section 112 in the Patent Act of 1952. I am aware that they mostly relate to combination, rather than composition, claims but I think they have a bearing here.[6] While the majority relies on Wabash, it does not rely on the *decision* made on the *facts* therein. It relies only on this phrase, "functional language at the exact point of novelty" which was dictum. That identical phrase was taken up in the Halliburton case by Mr. Justice Black and used as the basis of his decision in a combination claim case. Congress thereafter effectively overruled that case by enacting the third paragraph of section 112, as the following commentators' statements show. I think it may be said, therefore, that the quoted phrase, which the majority opinion here uses as the basis of its decision, is not the controlling principle of law it is assumed to be.

Here is what the commentators have said, in part:

Stefan A. Riesenfeld, Professor of Law, University of California, writing in the April 1954 Univ. of Pa.Law Rev., on "The New American Patent Act in the Light of Comparative Law: Part II," pages 731–2, said:

"The Supreme Court has exhibited a high degree of sensitivity against unduly comprehensive or indefinite claims and has invalidated scores of patents on this ground [citing, inter alia, Perkins Glue, Wabash, Halliburton, United Carbon [United Carbon Co. v. Binney & Smith Co., 317 U.S. 228, 63 S.Ct. 165, 87 L.Ed. 232] except where greater definiteness was not reasonably to be required. It has frowned especially upon functional descriptions, at least where they are either wholly functional or functional at the exact point of novelty. [Citing Perkins Glue, Wabash, and Halliburton] Probably as a reaction against what seemed to be a dangerous trend and excessive formalism the framers of the new code inserted a special paragraph \* \* \* designed to authorize within certain limits the use of functional expressions in patent claims.

\*      \*      \*      \*      \*      \*

'functionality' in claim drafting does not seem to be tabu any longer, even though it relates to the 'most crucial element in the "new" combination' [saying this was the vice of the claim in Halliburton] or goes to 'the precise point of novelty.' [Citing Faulkner v. Gibbs, 199 F.2d 635, 95 USPQ 400 (C.A. 9th 1952), and Wabash, supra.]"

Prof. Riesenfeld, in the omitted portion, explained that the amendment was limited to combination claims and by making the omission I do not wish to create the impression he was speaking generally of all kinds of claims.[7]

6. See in this regard, P. J. Federico, "Commentary on the New Patent Act," 35 U.S.C.A. Vol. 1, p. 25 (1954) wherein it is stated the word "combination" in the third paragraph of 35 U.S.C. § 112 includes "not only a combination of mechanical elements, but also a combination of substances in a composition claim, or steps in a process claim."

7. See, however, note 6, supra, and cited text.

Also in 1954 the P. J. Federico Commentary in U.S.C.A. came out. Speaking of the last paragraph of 112, he said (at 35 U.S.C.A. Vol. 1, p. 25):

"It is unquestionable that some measure of greater liberality in the use of functional expressions in combination claims is authorized than had been permitted by some court decisions, and that decisions such as that in Halliburton Oil Well Cementing Co. v. Walker * * * 329 U.S. 1 [67 S.Ct. 6, 91 L.Ed. 3], * * * are modified or rendered obsolete, but the exact limits of the enlargement remain to be determined. The language specifies 'an' element, which means 'any' element, and by this language, * * * it follows that more than one of the elements of a combination claim may be expressed as different 'means' plus statements of function. The language does not go so far as to permit a so-called single means claim, that is a claim which recites merely one means plus a statement of function and nothing else."

In the June 1955 George Washington Law Review, L. James Harris,[8] in "Some Aspects of the Underlying Legislative Intent of the Patent Act of 1952," at p. 683, starts a 6-page discussion of functionality in claims. At the outset, he points out (fn. 126) "There has been some confusion in the past between the requirements for the description and those for the claims," citing the Wabash case as an example. He says:

"In Section 112 the drafters attacked the functionality problem in several ways. To make it clear that claims were not intended to be a description of the invention, the clause relating to the claim in the section was made a separate paragraph."

Speaking specifically of the 3rd paragraph of 112, Harris says:

"Here for the first time is statutory recognition of the means clause which had grown up in claim drafting to cover the contribution of the inventor in certain cases where strictly structural terms appeared to be unnecessarily cumbersome or inadequate.

  *     *     *     *     *     *

"The Act now permits combination claims whether or not they are basic or [sic, means to] have a means clause at the exact point of novelty. This does go farther than courts have gone in the past."

See also In re Lundberg et al., 244 F.2d 543, 44 CCPA 909.

I submit that it cannot be stated as a sound proposition of law that functional language cannot properly be used at a point or points, including the exact point, of novelty.

The usual reasons for objection to functional language in claims are these:

1. The claim covers *everything* which would produce a stated result or effect. (Example: a "single-means" claim.)

2. The functional language gives the claim a scope such that it reads on the prior art. (Examples: Wabash and Shortell cases [In re Shortell, 173 F.2d 993, 36 CCPA 1013] cited by majority.)

3. The claim is vague—the public cannot tell what would infringe it; it does not clearly define.

4. The scope of the claim is *unjustifiably* broad—it covers too much more than was actually

8. Counsel to the Patent, Trademark and Copyright Subcommittee of the Judiciary Committee, the United States House of Representatives, directed and supervised the actual work of preparing the preliminary drafts and the bill that culminated in the Patent Act of 1952. [I quote this from a footnote in the article cited. For a more complete statement of the history of the writing of the Patent Act see a Southwestern Legal Foundation "institute" held March 21–22, 1963 to be published by the Bureau of National Affairs.]

invented and disclosed by the applicant.[9]

The claims in the present case insofar as they contain statements of function do not seem to me to run afoul of any of these objections.

SMITH, Judge (dissenting).

In my opinion, the Petition for Rehearing should be granted and further consideration given to what seems to me to be a misapplication by the majority of General Electric Co. v. Wabash Appliance Corp., et al., 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402.

The majority opinion arrives at the conclusion that the appealed claims are objectionably "functional" by what the Petition for Rehearing characterizes as "some rather elaborate reasoning". The reasoning of the majority requires as its starting point the acceptance of a limited construction of the word "potency" as meaning solely the "ability to effect a certain result". This construction was derived by the majority from a portion of the definition of "potency" in Webster's New International Dictionary, 2nd Ed., 1949. The entire definition leads me to the conclusion that there is a basic fallacy in the majority opinion which arises from attributing too narrow a meaning to this term. This fallacy then leads to the conclusion, with which I do not agree, that the word "potency" in the appealed claims defines "what the concentrate will *do* rather than what it *is*". [Emphasis added.]

The word "potency" is used in the appealed claims as one of the accepted parameters which tells a person skilled in this art what the claimed adrenocortico-trophin hormone concentrate *is* in terms of its *strength* stated as "potency".

I believe this position is supported by the complete definitions of the term in Webster's New International Dictionary, 2nd Ed., 1949, which defines "potency" as:

1. Quality or state of being potent; * * *

b. general efficiency or capability; power or energy more or less free to act or not; * * *

c. specific efficacy or capacity; * * *

Webster's Third New International Dictionary, 1961, gives another definition for "potency" as:

* * * c (1): chemical or medical strength or efficacy <the ∿ of the drink> <the ∿ of the drug> <the material has lost its ∿ by being exposed to light * * *>

A technical definition of "potency" which those of ordinary skill in this art would apply to it is found in Hack's Chemical Dictionary, 3rd Ed., 1944, where its meaning in therapeutics is given as "The strength or power or activity of a drug."

The word "potency" thus has shades and varieties of meanings which the majority does not appear to have considered. When used in its technical sense as it is in the appealed claims, it should be given a meaning which is consistent with that found in the specification. In the specification we find the word "potency" is used throughout in what seems to me to be the therapeutic meaning ascribed to it by Hack's, i. e., "The strength or power or activity of a drug." Thus po-

---

9. The majority observes that "included in claim 12 is a concentrate which has *no* [emphasis the majority's] vasopressin activity." I cannot see how such an observation in any way logically relates to the propriety of the functional description of properties used by appellant. For example, if the words "at least" were removed from section [A] of claim 12, the claim would *not* include "a con-centrate which has *no* vasopressin activity." *The claim, however, would still contain the same functional language objected to.* It appears to me, therefore, that the real objection the majority has to claim 12 is that it is unduly broad, *apart from* any consideration of "functionality." But that was not a ground of rejection in the Patent Office and so is not before this court.

822

tency of the claimed hormone concentrate is related in the specification to what is a "generally accepted standard" of The Technical Advisory Committee to the Study Section for Metabolism and Endocrinology of the National Institutes of Health. Throughout the specification, the term "potency" is used in its therapeutic sense in relation to the standard units recognized by the committee as in the statements that "The purified fraction obtained has a potency of 97% of standard * * *"; or "The final product has a potency which is 220% of standard * * *." Similar uses of the term are found in all the examples with the specific "potency" characteristics given as a term of measurement of the strength or activity of the drug in terms of a stated precentage *of a defined and well recognized standard.*

Thus, it seems to me that the reference to "potency", in the appealed claims is the same as specifying the concentration or strength of an acid or base in terms of its pH value, etc. It is, like most chemical and pharmacological *properties* of substances, expressed in terms of reference to an accepted standard. As such, it tells something about what the claimed product *is.*

As shown in the specification, the term "potency" is a parameter recognized in the pharmaceutical art as one of the characteristics of the product which particularly points out and distinctly claims what it *is.* In my prior dissent I discussed the term "posterior pituitary contamination" as measured by particularly stated units of vasopressin and oxytocin activity. Such terms are the antithesis of the vague, indefinite and functional terms so frequently criticized by the courts. When used as terms of description, in the specification, such terms are legally sufficient to meet the requirements of the first paragraph of 35 U.S.C. § 112; when used in the claims, such terms particularly point out and distinctly claim the subject matter which the applicant regards as his invention and are legally sufficient to meet the requirements of the second paragraph of 35 U.S.C. § 112.