IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00414-CR

No. 10-05-00415-CR

 

Kenny Clay,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 



From the 13th District
Court

Navarro County, Texas

Trial Court Nos. 29692, 29693

 



memorandum Opinion



 

The trial court found Kenny Clay guilty
of possession of a controlled substance (penalty group 3) with intent to
deliver and possession of a controlled substance (penalty group 1) with intent
to deliver.  He was sentenced to one year in a state jail and to seven years in
state prison, respectively, with the sentences to run concurrently.  He
appeals, arguing in each appeal that he received ineffective assistance of
counsel in the trial court.  We will affirm.

Clay asserts that his trial counsel was
ineffective in four respects:  (1) failing to file any pretrial discovery
motions, including a request for any Brady material; (2) failing to file
a motion to suppress; (3) failing to call or subpoena key witnesses to support the
defense theory that Clay legally possessed the controlled substances under
prescriptions; and (4) the totality of the circumstances of counsel’s
representation undermines the trial’s result.  Clay did not move for a new trial or request a
post-verdict hearing on trial counsel’s strategies or the reasons for the
challenged conduct.  

            The legal standard set out
in Strickland v. Washington applies to Clay’s claim of ineffective
assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  To
prevail, Clay must first show that his counsel’s performance was deficient.  Strickland,
466 U.S. at 687, 104 S.Ct. at 2064; see Mitchell v. State, 68 S.W.3d
640, 642 (Tex. Crim. App. 2002).  Second, Clay must show that this deficient
performance prejudiced his defense.  Strickland, 466 U.S. at 687, 104 S.Ct. at 2064.

            Appellate review of defense
counsel’s representation is highly deferential and presumes that counsel’s
actions fell within the wide range of reasonable and professional assistance.  Mallett
v. State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); Tong v. State, 25
S.W.3d 707, 712 (Tex. Crim. App. 2000).  Under normal circumstances, the record
on direct appeal will not be sufficient to show that counsel’s representation
was so deficient and so lacking in tactical or strategic decision-making as to
overcome the presumption that counsel’s conduct was reasonable and
professional.  See Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); Mitchell, 68 S.W.3d at 642.  Rarely will the trial record
contain sufficient information to permit a reviewing court to fairly evaluate
the merits of such a serious allegation:  “[i]n the majority of cases, the
record on direct appeal is simply undeveloped and cannot adequately reflect the
failings of trial counsel.”  Thompson v. State, 9 S.W.3d 808, 813-14
(Tex. Crim. App. 1999); see also Mitchell, 68 S.W.3d at 642 (“The
reasonableness of counsel’s choices often involves facts that do not appear in
the appellate record.  A petition for writ of habeas corpus usually is the
appropriate vehicle to investigate ineffective-assistance claims.”).

            In the absence of evidence
of trial counsel’s reason for the challenged conduct, we assume a strategic
reason for trial counsel’s conduct, if one can be imagined. Garcia v. State,
57 S.W.3d 436, 440 (Tex. Crim. App. 2001) (“an appellate court ‘commonly will
assume a strategic motivation if any can possibly be imagined,’ and will not
conclude the challenged conduct constituted deficient performance unless the
conduct was so outrageous that no competent attorney would have engaged in it”)
(quoting 3 W. Lafave, et al., Criminal
Procedure § 11.10(c) (2d ed. 1999) and citing Thompson, 9 S.W.3d
at 814).  But, if nothing in the record reveals trial counsel’s reason, it is
improper for us to speculate on it.  See Thompson, 9 S.W.3d at 814.

            The record does reveal that
Clay’s trial counsel informed the trial court that all pretrial matters would
be handled by agreement with the State and that any disputed issues would be
taken up at a later pretrial hearing.  The failure to file pretrial motions, in
and of itself, does not constitute ineffective assistance; an appellant must
present a record and show harm by the failure to file specific motions.  Huynh
v. State, 833 S.W.3d 636, 638 (Tex. App.—Houston [14th Dist.] 1992, no
pet.).  Also, Clay offers no evidence or argument of any Brady material
that the State failed to disclose.  In sum, nothing in the record negates the
showing in the record that pretrial discovery matters were to be, and in fact
were, handled by agreement.  Likewise, nothing in the record reveals why Clay’s
trial counsel did not call or subpoena any witnesses.  Clay testified about a
couple of physicians and some pharmacies where his prescriptions had been filled,
but the record does not reveal whether or not his trial counsel followed up on
this information.  Nor does the record reveal that any witness could have supported
Clay’s defense.  See id.  On Clay’s first and third complaints, without a record that reveals the
reasons for the challenged conduct of his trial counsel, we cannot speculate
whether Clay’s trial counsel was ineffective.

Clay was arrested by two state troopers
during a traffic stop.  During a pat-down search, the troopers found marihuana
and a few pills on his person.  In a search incident to Clay’s arrest, the
troopers found large amounts of pills in Clay’s vehicle.  Clay argues that his
trial counsel should have filed a motion to suppress this physical evidence
because the scope of the traffic stop was illegally continued and prolonged.  To
prove that trial counsel was ineffective for failing to file a motion to
suppress, Clay must prove that the trial court would have granted the motion,
had it been filed.  Jackson v. State, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998).

Both troopers involved in the stop
testified.  They had stopped Clay because his vehicle’s window tint was too
dark and was bubbly and wrinkled.  He also did not have proof of liability
insurance.  Clay does not contest these aspects of the stop.  Instead, he
argues that the troopers, without reasonable suspicion, impermissibly prolonged
the duration of the stop and, as part of a “fishing expedition” for unrelated
criminal activity, frisked Clay, which led to the discovery of the controlled
substances.  Without citation to the record or to a specific amount of time,
Clay asserts that a “substantial amount of time” passed from the initiation of
the stop to the pat-down search.

Both troopers said that Clay’s behavior
was strange; his movements were sudden and jerky, and his manner of speech was
odd.  One trooper described Clay’s nervous demeanor, shaky hands, shifting
eyes, and failure to make eye contact while speaking.  And Clay paused while looking
for his registration and insurance paperwork to try to listen to what was being
said on the other trooper’s radio, which concerned the trooper because he
thought Clay was possibly worried about the troopers’ receiving information
about Clay.  Both troopers said Clay appeared to have a small amount of a white
powdery substance and wet, clear mucus around his nose, which was consistent
with using illegal drugs.  Clay was asked to get out of his vehicle while his
citations were being written, and one of the troopers did a pat-down search for
weapons for officer safety based on Clay’s behavior and demeanor.  The trooper
felt a baggie in a pocket and thought it might be illegal drugs.  He asked Clay
if he had anything illegal on his person, and rather than responding, Clay’s
mouth started “shivering,” which heightened the trooper’s suspicion.  The
trooper then found the baggie of marihuana in the pocket and a smaller baggie
with some pills.

A routine traffic stop is analyzed as a
Terry stop.  Berkemer v. McCarty, 468 U.S. 420, 439, 104 S.Ct.
3138, 3150, 82 L.Ed.2d 318 (1984); see Terry v. Ohio, 329 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968).  A seizure
that is reasonable at its inception may violate the Fourth Amendment by virtue
of its excessive intensity and scope.  Davis v. State, 947 S.W.2d
240, 243 (Tex. Crim. App. 1997).  Thus, an investigative detention must be
temporary and last no longer than is necessary to effectuate the purpose of the
stop.  See Florida v. Royer, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75
L.Ed.2d 229 (1983).  Once the reason for the stop has been satisfied, the stop
may not be used as a “fishing expedition for unrelated criminal activity.”  Davis, 947 S.W.2d at 243 (quoting Ohio v. Robinette, 519 U.S. 33, 41, 117 S.Ct. 417, 422, 136 L.Ed.2d 347 (1996) (Ginsberg, J., concurring)).  “There
is, however, no constitutional stopwatch on traffic stops.  Instead, the
relevant question in assessing whether a detention extends beyond a reasonable
duration is ‘whether the police diligently pursued a means of investigation
that was likely to confirm or dispel their suspicions quickly.’”  United
States v. Brigham, 382 F.3d 500, 511 (5th Cir. 2004) (en banc) (quoting United
States v. Sharpe, 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605
(1985)).  An investigative detention following a traffic stop may last as long
as is reasonably necessary to effectuate the purpose of the stop.  Id. at 512.  The Supreme Court has expressly rejected placing a rigid time
limitation on Terry investigative detentions.  Kothe v. State,
152 S.W.3d 54, 64-65 (Tex. Crim. App. 2004) (citing Sharpe, 470 U.S. at 685-86, 105 S.Ct. at 1575 (declining to “establish a per se rule that a 20-minute
detention is too long” under Terry)).

A law enforcement officer may conduct a
limited search of a suspect’s outer clothing for weapons, even in the absence
of probable cause, when the officer reasonably believes that the suspect is
armed and dangerous.  Carmouche v. State, 10 S.W.3d 323, 329 (Tex. Crim.
App. 2000) (citing Terry, 329 U.S. at 27, 88 S.Ct. at 1883; Davis v.
State, 829 S.W.2d 218, 220 (Tex. Crim. App. 1992)).  The purpose of this
limited search is to allow the officer to pursue investigation without fear of
violence, not to discover evidence.  Id.  The officer need not be
absolutely certain that an individual is armed; the issue is whether a
reasonably prudent person would justifiably believe that he or others were in
danger.  O’Hara v. State, 27 S.W.3d 548, 551 (Tex. Crim. App. 2000).  A
frisk is justified when the officer can point to specific and articulable facts
that reasonably lead him to conclude that the suspect might possess a weapon.  Carmouche,
10 S.W.3d at 329.

            If a protective frisk goes
beyond what is necessary to determine if the suspect is armed, the frisk is no
longer valid under Terry and its fruits will be suppressed.  Id. at 330.  But “[i]f a police officer lawfully pats down a suspect’s outer
clothing and feels an object whose contour or mass makes its identity
immediately apparent, there has been no invasion of the suspect’s privacy,
beyond that already authorized by the officer’s search for weapons.”  Id. at 330-31 ((quoting Minnesota v. Dickerson, 508 U.S. 366, 375, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334 (1993)).

Under the evidence in this case, we
find that, had Clay’s trial counsel filed a motion to suppress, the trial court
would not have abused its discretion in finding that the pat-down that revealed
the controlled substances in Clay’s possession was for officer safety and was
not unreasonable, and we would hold that the pat-down was constitutionally
justified.  See id. at 329-30.

            Finally,
based on our above discussion, the totality of the circumstances concerning
Clay’s trial counsel’s representation does not render her assistance
ineffective.  We overrule Clay’s
issue in each appeal and affirm the trial court’s judgments.

 

BILL VANCE

Justice

 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

(Chief Justice Gray concurs in the
judgment only, not the opinion of the Court.)

Affirmed

Opinion
delivered and filed August 30, 2006

Do
not publish

[CR25]